*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

In re        ) Misc. File No. 19-202
           )
Named Involuntary Petitioner  )
           )
STEVEN WAYNE BONILLA   )
           )
_____)

**MEMORANDUM OPINION AND DECISION AFTER
REVIEW OF RESPONSIVE PLEADINGS
FILED BY STEVEN WAYNE BONILLA**

Steven Wayne Bonilla delivered to the Bankruptcy Court for the Eastern District of California ninety-eight (98) Bankruptcy Form 105s (involuntary bankruptcy petition forms) (Dckt. 3-93, 101-107), seeking to commence ninety-eight involuntary bankruptcy cases in the Eastern District of California against various federal and state court judges and justices. Because of facially identified issues relating to the Form 105s, including whether Mr. Bonilla had standing to commence such involuntary cases, and no filing fee for the Form 105s presented being paid, the court issued an order creating this miscellaneous case file, No. 19-202 ("Miscellaneous File"), in Mr. Bonilla's name so that all of the Form 105s could be docketed in one place. The Miscellaneous File also affords Mr. Bonilla the opportunity to present a unified response, rather than ninety-eight separate responses. Additionally, to the extent that Mr. Bonilla would disagree with whatever ruling was made by this court, the creation of the Miscellaneous File and the unified response provides for a single appeal which Mr. Bonilla would have the option of pursuing, rather than ninety-eight separate appeals.

In the Court's Order to open the Miscellaneous File (Dckt. 1), it provided for Mr. Bonilla to file responsive pleadings addressing the various issues in the Court's Order. Mr. Bonilla has availed

himself of the opportunity and presented the court with the following pleadings:

A.     Response to 6-19-19 Court Order, Dckt. 99 ("Response," 37 pages).

B.     Exhibits from State Court Proceedings, Dckt. 100 ("Exhibits," 68 pages).

C.     Addendum re "Honorary Obligation," Dckt. 108 ("Addendum," 15 pages).

D.     Additional Grounds Statement, Dckt. 114 ("Additional Statement," 3 pages).

E.     Response re California Judicial Council, Dckt. 115 ("Response to Supplemental Docketing Order," 10 pages).

***Applications to Proceed in Forma Paupris***

Mr. Bonilla has filed five Applications to Proceed in *Forma Pauperis*. Dckt. 95–98. The Application filed as Docket Number 95 is a partial document, consisting of only one page. Dckt. 95. The other four Applications appear to be complete documents, with three being seven pages in length and one (Dckt. 98) eight pages in length. In the attachments to these documents, Mr. Bonilla states that he is not employed and currently has no income. Further, he has no spouse, no assets, and no monthly expenses.

The eight-page Application has as its cover page one titled for the U.S. District Court or Bankruptcy Court in the Eastern District of California. Dckt. 98 at 1. The second page of this document is another "first page" of the Application which is titled as being made to the Bankruptcy Court for the Central District of California, San Fernando Division. *Id.* at 2.

The Application filed as Dckt. 96 is titled as requesting the relief from the Bankruptcy Court in the Central District, Riverside Division.

**BANKRUPTCY COURT, BANKRUPTCY PROCEEDING, AND FEDERAL JURISDICTION REGARDING BANKRUPTCY PROCEEDINGS**

In beginning this review it is very important to put in context the position of the bankruptcy court and bankruptcy judges. The bankruptcy court and bankruptcy judges have been created by Congress pursuant to Article I of the United States Constitution. While organizationally part of the United States district court, the bankruptcy court is not an Article III court under the United States Constitution. The scope of a bankruptcy court proceeding and exercise of a bankruptcy judge's judicial authority exists only to the extent as provided in 28 U.S.C. § 1334 (federal court bankruptcy

jurisdiction) and § 157 (exercise of federal judicial power by a bankruptcy judge). This judicial power may properly be exercised over bankruptcy cases and civil proceedings arising under the Bankruptcy Code, as well as those arising in and related to a bankruptcy case.

Mr. Bonilla has provided the court with significant information concerning his state court criminal proceeding, the asserted defects in the conviction, and various theories and authorities by which he asserts his rights have been denied. That information is relevant to considering whether standing exists for Mr. Bonilla asserting the right to commence the involuntary bankruptcy cases. However, 28 U.S.C. § 1334 and § 157 limit the scope of an Article I bankruptcy judge's exercise of federal judicial power to those bankruptcy issues, and not to the full breadth of the federal judicial power arising under Article III of the United States Constitution (for which it is the Article III District Court judges, Court of Appeals judges, and Supreme Court justices whom may exercise that full power).

The Response indicates that Mr. Bonilla appreciates this distinction and is seeking to present the "bankruptcy law issues" to this Article I court and not attempting to have this court act outside its jurisdiction and judicial power granted to it by Congress. To the extent the court has misread Mr. Bonilla's statements, this discussion has been included to explain the limitation on this court's powers with respect to the broader range of Mr. Bonilla's issues with the judicial system.

**Involuntary Bankruptcy Petition Provisions**

Congress has provided a process under the Bankruptcy Code by which creditors of a person may force that person into bankruptcy with the "mere" filing of an involuntary bankruptcy petition by the creditors. In pertinent part to the matters now before the court, 11 U.S.C. § 303 (discussed in greater detail *infra*) provides that three or more creditors of a person may commence an involuntary bankruptcy case if they collectively hold at least $15,750.00 in liquidated, noncontingent, not subject to *bona fide* dispute unsecured debt. If the person for whom the involuntary bankruptcy case is to be commenced has less than twelve creditors with such claims, then a single creditor who meets the above criteria may commence the involuntary bankruptcy case.

Here, it is only Mr. Bonilla who is filing the Form 105s as the sole creditor seeking to force the Form 105 Targets into bankruptcy. Presumably, Mr. Bonilla is asserting that each of the

1  Form 105 Targets have less than twelve creditors each. The actual number of creditors holding

2  unsecured claims is unknown at this time.

3                    **FEE WAIVER/IN *FORMA PAUPERIS* REQUESTS**

4          With the responsive pleadings Mr. Bonilla has included five fee waiver requests. As

5  discussed below, Mr. Bonilla is now seeking to pursue only ninety-eight involuntary bankruptcy

6  cases. Mr. Bonilla directs the court to the provision of 28 U.S.C. § 1930 (which specifies required

7  filing fees in bankruptcy cases) and asserts that the district court and the bankruptcy court are not

8  restricted in waiving the filing fees, so long as it is in accordance with Judicial Conference policy.

9  Response, pp. 28:23-28, 29:1-15; Dckt. 99. He then directs the court to consider 28 U.S.C. § 1915

10  which provides for Prisoner's Application to Proceed in *Forma Paupers*.

11          Congress provides in 28 U.S.C. § 1930(a)(1)(A) the required filing fees for bankruptcy cases,

12  which for a Chapter 7 case is $245.00 (to which is added an administrative fee). In 28 U.S.C.

13  § 1930(f)(1) it is provided that the district court or the bankruptcy court may waive the Chapter 7

14  filing fee for an individual if he or she meets specified economic requirements. Such individual

15  entitled to seek a Chapter 7 fee waiver is further identified as "such debtors" in subparagraph (f)(2)

16  of § 1930, with additional waiver relief for "such debtors" who meet the requirements of

17  subparagraph (f)(1) of § 1930 for "other fees prescribed" under 28 U.S.C. § 1930(b)(additional

18  Judicial Conference fees) and (c)(notice of appeal fees). Mr. Bonilla in his Response clearly states

19  he is a "creditor," and does not assert to be, and is not, a debtor.

20          In asserting his status as a creditor, Mr. Bonilla directs the court to 28 U.S.C. § 1930(f)(3),

21  which states, "(3) This subsection does not restrict the district court or the bankruptcy court from

22  waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other

23  debtors and creditors." He asserts that pursuant to the statutory enactment in 28 U.S.C. § 1915

24  providing for a prisoner's right to proceed in *forma paupers*, that it is the "Judicial Council Policy"

25  upon which the district court or the bankruptcy court can waive a Chapter 7 filing fee for a creditor

26  seeking to file a Form 105. However, the Congressional enactment in 28 U.S.C. § 1915 is not the

27  Judicial Council Policy, as adopted by that Article III branch of the government, with respect to

28  bankruptcy fees.

The Federal Guide to Judiciary Policy § 610.70 and § 610.80 adopted by the Judicial Council specifically provides for fee waivers of fees in and relating to bankruptcy cases providing:

§ 610.70 Fee Waivers

Other than where expressly allowed in the fee schedules (e.g., Items 4 and 11 of the Bankruptcy Court Miscellaneous Fee Schedule) or by statute (see: § 610.80 and Guide, Vol. 4, § 820), fee waivers are generally prohibited. Judicial Conference policy allows certain types of users to ask courts to exempt them from fees for Public Access to Court Electronic Records (PACER). See: EPA fee schedule and § 630.20.

§ 610.80 Applications to Proceed In Forma Pauperis

(a)     Eligible parties may proceed without prepayment of fees under 28 U.S.C. § 1915 (district courts and courts of appeals).[1]

(b)     The filing fee in a chapter 7 bankruptcy case may be waived in accordance with 28 U.S.C. § 1930(f). Judicial Conference guidance on fee waivers in bankruptcy courts is posted on the judiciary's public website. See: Guide, Vol. 4, § 820 (Chapter 7 Fee Waiver Procedures).

The Judicial Conference guidance referenced in § 610.80 above are summarized as set forth below, with the entire Guide, Vol. 4, §§ 820 et seq., attached as Addendum "A" to this Order:

§ 820 Chapter 7 Fee Waiver Procedures

The Judicial Conference promulgated these procedures to assist district courts and bankruptcy courts with **implementing the fee waiver provisions** set forth in Section 418 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. No. 109-8, 199 Stat. 23), and codified at 28 U.S.C. **§§ 1930(f)(1)-(3)**. JCUS-SEP 13, pp. 8-9.

§ 820.10 Filing Fee Waiver Application and Initiation of the Chapter 7 Case

(a) In lieu of paying the prescribed chapter 7 filing fee or filing an installment application, **an individual debtor may**, along with the bankruptcy petition, **file an application to waive the filing fee**.

(1) Federal Rule of Bankruptcy Procedure 1006(c) requires that the application conform substantially to Official Form 103B.

(2) A defective or otherwise deficient waiver application should be processed according to the court's standard operating procedures for processing deficient pleadings and papers.

(b) When a chapter 7 petition in an individual debtor case is accompanied by an application to waive the filing fee, the court should initiate and process the case in the same manner as other individual chapter 7 cases.

---

[1]  This reference to 28 U.S.C. § 1915 is in connection with the district court and the courts of appeals, not the bankruptcy courts.

Guide to Judicial Policy, Vol. 4, Ch 8: Bankruptcy Case Policies (emphasis added).

No provision is made in the Judicial Council Policy for the waiving of the Chapter 7 filing fee for a creditor seeking to commence an involuntary bankruptcy case for another person.

The Supreme Court has enacted Federal Rule of Bankruptcy Procedure 1006 to expressly address the filing fee in bankruptcy cases and the waiver of such fee. In Rule 1006(c) providing for the waiving of the Chapter 7 filing fee, such waiver must be requested by the Debtor:

> (c) Waiver of filing fee. A voluntary **chapter 7 petition filed by an individual** shall be accepted for filing if accompanied by **the debtor's application requesting a waiver** under 28 U.S.C. § 1930(f), prepared as prescribed by the appropriate Official Form.

Fed. R. Bankr. P. 1006(c)(emphasis added).

The filing of an involuntary bankruptcy petition without the payment of the filing fee is improper. There is no basis for the waiver of such a fee by a creditor seeking to place another person in bankruptcy.

The failure to pay the filing fee is a basis for the Clerk of the Court not filing each of the Form 105s as involuntary bankruptcy petitions.

**BASIS ASSERTED BY MR. BONILLA FOR HAVING A "CLAIM"**
**AND**
**ANALYSIS OF WHETHER THERE IS FACIALLY A *BONA FIDE* DISPUTE**

In considering the original and responsive pleadings/documents, the court first notes that Mr. Bonilla has been very clear and straightforward is presenting the asserted grounds for having standing to commence involuntary cases against the now ninety-eight different Form 105 Targets. The court appreciates his candor and strives to respond in the same clear manner.

The real basis for Mr. Bonilla wanting to file involuntary bankruptcy petitions against various federal and state judges and justices appears to rise from his frustration over being unable to successfully advance such challenges to his state court criminal conviction directly through the state and federal judicial systems. The vast majority of his detailed legal arguments advanced in the various response pleadings argue why his criminal conviction is improper, why he asserts that the state court lacked jurisdiction to determine that he was guilty of a crime arising under state law (rather than a "mere error" based on the law and evidence), and why the various Form 105 Targets

6

1  should be liable for not issuing judgments or orders that his criminal conviction is void.

2  **<u>Asserted Honorary Obligation</u>**

3  <u>Claim 1</u>

4       In his Addendum pleading (Dckt. 108) Mr. Bonilla first states that the debt he asserts is an

5  "honorary obligation debt" owed by each of the Form 105 Targets.  Mr. Bonilla then provides the

6  court with the following definitions as are stated to apply to his Claim 1:

7           (1) Contract - an agreement between 2 or more persons which creates
            an <u>OBLIGATION</u> to do or not to do a particular thing.
8
            (2) Equal Protection of Laws of a state is extended to the enforcement
9           of contracts under the 14th Amendment of the United States
            Constitution.
10
            (2) [sic] Debt - a fixed and certain obligation to pay money or some
11          other valuable thing or things (such as the Petitioner's liberty and
            freedom), in the present tor in the future.  In a broad sense, that which
12          is due to respond to another in money, labor, or service, it may even
            mean a moral or <u>HONORARY OBLIGATION</u>.
13
            (3).  Honorary - As applied to public offices and other positions of
14          responsibility or trust.  In other contents or usage, (as here), it means
            attached to or growing out of some honor or dignity or HONORABLE
15          OFFICE, or else it imports an <u>OBLIGATION OR DUTY</u> growing out
            of honor or trust only.
16
            (4) Obligation - that which a person is bound to do or forbear; any duty imposed by
17          law, promise or contract, etc..

18          Thus, an HONORARY OBLIGATION is a duty imposed by law on a public
            official, which creates an OBLIGATION, owe to Petitioner to declare the judgment
19          null and void.  Which is a debt owed to the Petitioner that is enforceable under the
            Equal Protection of Law Claus [sic] of the 14th Amendment of the United States
20          Constitution.

21  Addendum, pp. 1:21-28, 2:1-24; Dckt. 108 (emphasis in original).

22       In considering the above, Mr. Bonilla is asserting that he is owed a debt arising from a public

23  official's obligation to properly fulfill the duties of his or her office.  While stating the contention,

24  the court is not presented with Mr. Bonilla's assertion that a monetary obligation is owed by such

25  public official to Mr. Bonilla because Mr. Bonilla did not prevail in the proceedings or matters before

26  that official.

27       Further, while a definition is initially given for a contract, it is clear what Mr. Bonilla asserts

28  is not based on a bilateral contract with each of the Form 105 Targets, but an inchoate obligation for

1  a public official to fulfill the duties of his or her office.  On its face, that duty flows to the "public"

2  and is not an obligation which is owed in a bilateral contract between Mr. Bonilla and each of the

3  Form 105 Targets.

4    In substance, Mr. Bonilla asserts a moral obligation to uphold the honor and dignity of that

5  person's office. Mr. Bonilla contends that such honor has been violated because he, Mr. Bonilla, has

6  not been able to prevail in his contentions in his proceedings before those Form 105 Targets.

7  Claim 2

8    As grounds for his second claim, Mr. Bonilla asserts that the judgment for his conviction in

9  the state court criminal proceedings is void on the record in that state court proceeding.  *Id.*.  at 2:26-

10  18.  Because Mr. Bonilla concludes that his criminal conviction is void, he then asserts that a duty

11  exists for the public official to agree with him and declare the conviction void.  *Id.* at 3:1-5.

12    Thus, Mr. Bonilla argues that since he disagrees with the various public officials regarding

13  whether the state court criminal conviction is void, those public officials owe an honorary monetary

14  obligation to him.

15    Other than his statement of the above asserted principle, Mr. Bonilla offers no legal authority

16  showing that his disagreement over the outcome of a judicial or other proceeding births a monetary

17  obligation owed to him personally by the judicial officer–as opposed to giving rise to Mr. Bonilla's

18  right to appeal the decision.

19  Claim 3

20    For a third basis for a claim against the various Form 105 Targets, Mr. Bonilla asserts that

21  based on the Honorary Obligation owed, for which money damages are owed for a conspiracy,

22  Mr. Bonilla has a right under the Equal Protection Clause to collect on the debts based on the

23  Honorary Obligations.

24    Mr. Bonilla states that he now seeks to "collect on debts that are owed to him, including ones

25  born out of an HONORARY OBLIGATION, via this Bankruptcy Court."  *Id.* at 3:11-14 (emphasis

26  in original).

27    This ties together the first two grounds for his claims, identifying these Form 105s being used

28  in lieu of the appropriate state court or district court complaints seeking to assert the enforcement of,

1  and recover damages from, such honorary obligations.

2  Relief Sought

3        Mr. Bonilla concludes, stating that this Bankruptcy Court has a duty to file the Form 105s and

4  commence involuntary bankruptcy cases as sought by Mr. Bonilla based on the above asserted

5  obligations stemming from alleged honorary obligations. Mr. Bonilla argues that the court, after

6  commencing the involuntary bankruptcy cases against the Form 105 Targets, can issue multiple

7  orders to show cause and then litigate with each of the Form 105 Targets the issue of proper federal

8  court jurisdiction.

9        While politely stated, this last demand is in the same nature of the "Honorary Obligations"

10  which are asserted to exist, and must be done because Mr. Bonilla so asserts.

11  **SUBSTANCE OF RELIEF REQUESTED**

12        Attached to the Addendum (Dckt. 108) is another pleading titled "Raising Jurisdictional

13  Question" ("Raising Pleading"). *Id.* (starting with a new page 1, which is the fourth page of this

14  pleading). The caption on this Raising Pleading is "In re: to the matter of Alameda County NEVER

15  ACQUIRED JURISDICTION." *Id.* at 1:7-9 (emphasis in original). This does not appear to be a

16  pleading relating to any of the Form 105s, nor to the Miscellaneous File opened in this court in

17  Mr. Bonilla's name.

18        In the Raising Pleading, Mr. Bonilla states that he seeks to commence an "INDEPENDENT

19  COLLATERAL SUIT." *Id.* at 1:12 (emphasis in original). He argues that the Alameda Superior

20  Court never acquired jurisdiction over him, or the subject matter of the criminal proceedings in which

21  he was convicted. He asserts that certain evidence was not admitted, and argues under the California

22  Rules of Evidence, such evidence was not admitted in his criminal proceedings.

23        Mr. Bonilla then asserts that this is an independent collateral attack on the state court

24  conviction due to lack of jurisdiction, and not as a *habeas corpus* petition. He then discusses

25  extrinsic fraud upon a court and that when such fraud occurs, it may be attacked at any time or place.

26        Mr. Bonilla then provides extensive citations and legal arguments concerning void judgments,

27  lack of jurisdiction, and the impropriety of a judge proceeding with the adjudication of the matter.

28  This includes detailed factual allegations and legal conclusions drawn therefrom why Mr. Bonilla

asserts that his criminal conviction is void for the lack of jurisdiction.

This is consistent with Mr. Bonilla's Response (Dckt. 99) in which his discussion does not go in to why the various ninety-eight Form 105 Targets owe him a debt, but instead argues why a court should declare his criminal conviction void based on Mr. Bonilla's assertion that the state court did not have subject matter jurisdiction to adjudicate the state criminal law conviction.[2]

Mr. Bonilla demonstrates a keen understanding that there are limits to the exercise of judicial power by a judge. Further, that when the exercise of such power is exceeded, it can result in the judgment or ruling being void.

It is also clear that these Form 105s are filed as an alternative device to try and have further, now Article I, judges conduct further review of his assertion that his criminal conviction is void. In doing so with this court, Mr. Bonilla is asking the court to commit the sin which he accuses other judges of having made–issuing rulings when the court does not have subject matter jurisdiction.

Bankruptcy judges have been created for the unique purpose of presiding over bankruptcy cases and adjudicating proceedings arising under the Bankruptcy Code, in the bankruptcy case, and related to the bankruptcy case. 28 U.S.C. §§ 151, 152, 157, 1334. This authority to exercise federal judicial power is carefully circumscribed to limit the bankruptcy judge, who is appointed as an Article I judge, in the exercise of that power to only the matters as specified by statute. This authority is much narrower than those of an Article III District Court Judge, Court of Appeal Judge,

---

[2] From the detailed and extensive discussion and analysis concerning Mr. Bonilla's assertions that the California Superior Court lacked subject matter jurisdiction to adjudicate an action brought for violation of California criminal law appears to center on the assertion that the subpoena for evidence used in the conviction was not admitted into evidence in his state court criminal trial. Mr. Bonilla also asserts that it was admitted that such subpoena did not exist.

What Mr. Bonilla does not link is the law which would establish that the California Superior Court did not have subject matter jurisdiction to adjudicate an issue of California criminal law. The California Superior Court is the state court of general civil and criminal subject matter jurisdiction. Thus it may appear that Mr. Bonilla is contending that the conviction was in error, but the assertion of lack of "subject matter jurisdiction" does not appear.

This court comments the above in a footnote are not purporting to making any ruling on the state court criminal conviction or applicable law, but only to note the issue stands out in reviewing the detailed and extensive pleadings and documents filed by Mr. Bonilla.

or Supreme Court Justice. While appearing expansive in the exercise of federal court jurisdiction in the bankruptcy corner of the federal judiciary, it is but a small slice of the federal judicial power residing in the Article III judges.

Here, Mr. Bonilla seeks to commence an independent action to collaterally attack his criminal conviction in state court. No legal basis is given for a bankruptcy judge to undertake such a determination. This appears to be Mr. Bonilla's dispute with the State of California, not any of his Form 105 Targets.[3]

## DENIAL OF REQUEST FOR WAIVER OF FILING FEES
### AND
## DENIAL OF REQUEST FOR FILING OF
### INVOLUNTARY BANKRUPTCY
### PETITIONS

As an initial point, the failure to present the court with the required filing fee precludes the filing of any of the Form 105s. The filing fee is required and no authority exists for a bankruptcy judge to waive such filing fee. Congress and the Supreme Court have set forth the statutory and Federal Rules of Bankruptcy Procedure grounds for the limited waiving of filing fees for voluntary bankruptcy cases filed by the debtors themselves.

Next, based on the original filings, the Response (Dckt. 99), Exhibits (Dckt. 100), Addendum (Dckt. 108), and Additional Statement (Dckt. 114), the court concludes that Mr. Bonilla does not qualify as a creditor who has standing to have commenced involuntary against the ninety-eight Form 105 Targets in this District. As stated previously, the court may, *sua sponte*, raise the issue of standing at any time. The court has so raised the issue and afforded Mr. Bonilla the opportunity to address the issue of whether jurisdiction exists–whether he is a creditor who may commence an involuntary bankruptcy case.

The court has addressed in detail the requirements for commencing an involuntary bankruptcy

---

[3] The court acknowledges that the majority of Mr. Bonilla's pleadings consist of extensive discussion, arguments, legal citations, conclusions, and assertions as to why his criminal conviction was void and why judges who have the jurisdiction to do so should declare it void. This bankruptcy court does not discuss those extensive points and arguments, which, though read by this court to see what was applicable to the proper exercise of jurisdiction, raise issues and seek relief that is clearly well outside the jurisdiction of this court.

case and the significance of commencing such a case, the immediate negative consequences (well beyond those of a person merely filing a lawsuit in the district or state court) in the prior Order establishing the Miscellaneous File for Mr. Bonilla and affording Mr. Bonilla the opportunity to address that Order and issues before this court make its final determination. *See* Order to Open Bankruptcy File for Steven Wayne Bonilla, Assignment of Miscellaneous File Number, and Scheduling of Supplemental Pleadings to be Filed by Mr. Bonilla ("Order to Open Miscellaneous File"), Dckt. 1. The court does not repeat that determination and the grounds stated therein, but incorporates it, and that entire ruling, herein by this reference as part of this decision, with a copy of the Order to Open Miscellaneous File attached hereto as Addendum "B."

The statutory requirements for a person to qualify as a creditor to commence an involuntary bankruptcy case are set forth in 11 U.S.C. § 303(b) and summarized as follows:

> An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –
>
> (1) There must be at least three or more entities, each of which is either:
>
> > (a) a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder,
> >
> > and
> >
> > (b) if such noncontingent, undisputed claims aggregate at least $ 16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> or
>
> (2) if there are fewer than 12 such holders of claims or, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, by one or more of such holders that hold in the aggregate at least $ 16,750 of such claims; . . . .

The court addresses these elements below.

Monetary Obligation

For the court to commence an involuntary bankruptcy case against each of the ninety-eight Form 105 Targets, it must be at least colorable (appearing on its face, but not required to be certain) that Mr. Bonilla holds a claim for a monetary obligation against each of the ninety-eight Form 105 Targets against whom he wants to commence involuntary bankruptcy case.

1    On this point, while Mr. Bonilla makes reference to a contractual obligation in the nature of

2 an "Honorary Obligation," which would therefore not appear to be contractual but somehow arising

3 under the law, he cannot cite the court to any legal authority for such obligation.  While Mr. Bonilla

4 argues that each Form 105 Target has a duty to act for him personally, and when they do not act in

5 a matter consistent with what he demands that each owes him money, Mr. Bonilla  shows no legal

6 authority for a contention that each of these persons in public office owe him a personal debt for not

7 acting as he requests. Further, as shown by Mr. Bonilla, there is a *bona fide*, colorable issue that each

8 of the persons he complains of may assert judicial immunity with respect to the acts taken or not

9 taken.

10    <u>That is not Contingent</u>

11    It appears that the Honorary Obligations asserted by Mr. Bonilla are not contingent, but are

12 alleged to be owed as of the time each of the Form 105 Targets failed to declare his state court

13 conviction void.

14    <u>That is not Subject to *Bona Fide* Dispute as to Liability</u>

15    On this point, Mr. Bonilla asserts that there can be no *bona fide* dispute because Mr. Bonilla

16 is correct that the state court judgment for his criminal conviction is void.  It asserts that it is "void"

17 because the California Superior Court lacked subject matter jurisdiction to adjudicate an issue of

18 California criminal law.  As briefly addressed above, the California Superior Court is the court of

19 general civil and criminal jurisdiction for California law and is the court that adjudicates California

20 criminal trials.  In his various pleadings, Mr. Bonilla argues that this court of general criminal and

21 civil jurisdiction could not have jurisdiction for his criminal conviction because purported evidence

22 was improperly admitted.

23    Further, he argues that no judicial immunity can be claimed by any of the Form 105 Targets

24 failing to declare that the state court conviction is void because judicial immunity cannot be claimed

25 when a judge does not have jurisdiction.  Mr. Bonilla conflates his assertion that the California

26 Superior Court did not have jurisdiction to adjudicate a California criminal law trial with asserting

27 that the various Form 105 Targets could not have jurisdiction, and thus could not assert judicial

28 immunity, in the various judicial proceedings that Mr. Bonilla has commenced or attempted to

1  commence in the various state and federal courts.

2        There was one judge who presided in the state court trial from which Mr. Bonilla's conviction

3  arises.  It is in that one state court trial that Mr. Bonilla asserts there was no subject matter

4  jurisdiction.  Everyone else who is a Form 105 Target appears to be a member of the state or federal

5  judiciary that Mr. Bonilla asserts has failed to act and declare the state court conviction determined

6  void.

7        In seeking to have the various Form 105 Targets determine that the state court conviction was

8  void, Mr. Bonilla is necessarily admitting that each of those Form 105 Targets properly had

9  jurisdiction to make such a determination–even if such determination was to deny Mr. Bonilla the

10  relief he sought.

11        If Mr. Bonilla seeks to assert that the Form 105 Targets cannot assert judicial immunity

12  because they did not have jurisdiction to act, then he could not properly seek relief from them to

13  declare the state court conviction void.  Thus, if Mr. Bonilla were correct that the various state and

14  federal judges did not have jurisdiction to act such that they could not raise a judicial immunity

15  defense, then there is no basis for Mr. Bonilla asserting that he has a claim against someone for

16  failing to act when they were not authorized to so act.

17        Clearly, there exists a *bona fide* dispute obvious on the face of Mr. Bonilla's pleadings that

18  judicial immunity (an issue Mr. Bonilla raises in the documents presented to the court) is at issue.

19  <u>That is not Subject to *Bona Fide* Dispute as to Amount</u>

20        Mr. Bonilla has not provided the court with any computation of how he asserts a dollar

21  amount that is owed to him.  There is no contract.  There are no statutory damages.  The obligation

22  amount is just an assertion that each of the Form 105 Targets owes Mr. Bonilla more than Three

23  Hundred Billion Dollars ($300,000,000,000.00).[4]  Such an amount is so huge, and there being no

24  explanation as how such would be computed under applicable law, that it demonstrates there being

25  a facial *bona fide* dispute as to amount.

26  ───────────────

27       [4]  In the seven later filed Form 105s (Dckts. 101-107), the amount asserted to be owed is
     lowered to Forty Seven Billion, Four Hundred Ninety One Million, Six Hundred Forty Six
28   Thousand, Four Hundred Fifty Two Dollars and Thirty-Eight Cents ($47,491,646,452.38).

**Response to Judicial Council**

On August 1, 2019, the court issued a Supplemental Order concerning the docketing of the Form 105s ("Supplemental Docketing Order," Dckt. 109). The court previously prepared an order which included a chart identifying each of the Form 105s delivered to the court by Mr. Bonilla and identifying each person named as the Form 105 Target in each Form 105. In the Order to Open Miscellaneous File the court believed that the Clerk's Office had been sufficiently directed as to how to label the Form 105s on the Docket so as to not create any false impression that a Form 105 had been "filed" (i.e. "commenced").

It was brought to the court's attention by an attorney appearing in open court who stated that he was counsel for the California Judicial Council, that the docket entries for the Form 105s appeared to have been entered in such a manner as to create the potential for confusion. In reviewing the docket entries that appeared when reviewing the docket through the public Pacer access, as compared to the internal court access version, the court concluded that some express direction to the Clerk's Office was necessary and the Supplemental Docketing Order was entered specifying the methodology used to clearly identify each Form 105 docketed.

Mr. Bonilla filed a Response to the Supplemental Docketing Order on August 15, 2019. Dckt. 115. In it, Mr. Bonilla states that he seeks a proper and fair adjudication of his verified claims. *Id.* at 2:2-5. He states he asserts issues pertaining to "FRAUD, fraudulently/altered and forged documentation by the prosecution/conspiracy in violation of [Mr. Bonilla's] Right of Privacy, as a matter of law...as well as fraud/criminal fraud committed upon the court and [Mr. Bonilla] by State and Federal actors perpetrating KNOWN unlawful-unconstitutional violations wile acting under the color of law." *Id.* at 2:6-12 (emphasis added).

At this point, it well appears that Mr. Bonilla is seeking to "adjudicate" (i.e. litigate) various state and federal law claims and rights he asserts to have against the various Form 105 Targets, not already liquidated, not subject to *bona fide* dispute claims that are to be paid.

The Response to Supplemental Docketing Order continues, addressing issues as to why the state court criminal conviction is void and must be vacated.

The Response to Supplemental Docket Order then plainly states the relief being sought from

15

this bankruptcy court by Mr. Bonilla (both in the response and it appears to be in filing the ninety-eight Form 105s):

Relief Sought

(1). Declare the judgment [State Court criminal conviction] void or issue an order to show cause.

(2). Seven Wayne Bonilla is entitled to immediate release [from State incarceration based on the criminal conviction].

Dckt. 115, p. 3:21-23.

## RULING

It has been demonstrated that Mr. Bonilla does not have standing to commence involuntary bankruptcy cases for the Form 105 Targets, Mr. Bonilla not meeting the requirements to be a petitioning creditor under 11 U.S.C. § 103.

Alternatively, if the mere assertion that one is a creditor is sufficient for Constitutional standing, the court concludes that the documents and assertions of Mr. Bonilla do not show that he has a claim (as defined under the Bankruptcy Code); to the extent he has a claim it is unliquidated and the $100,000,000,000.00 claim subject to disputes as to the liability, including the defense of judicial immunity, and the amount.

Further, as demonstrated in the original documents, the Response, Exhibits, Addendum, Additional Statement, and Response to Supplemental Docketing Order, the actual relief sought through the ninety-eight Form 105s is well outside of the limited jurisdiction of a bankruptcy judge and that granted pursuant to 28 U.S.C. § 1334 – the determination that the state court judgment for Mr. Bonilla's criminal conviction is void and that Mr. Bonilla be released from his incarceration at San Quintin Prison.

Therefore, the court determines that each of the Form 105s delivered to the court by Mr. Bonilla shall be docketed, or continue to be if already docketed, in the Miscellaneous File, and that involuntary bankruptcy cases not be commenced for each of the Form 105 Targets.

///

///

///

1   This one order applies to all of the Form 105s presented to the court, which shall not be filed

2   as involuntary bankruptcy petitions.

3   **Dated:** August 22, 2019                    **By the Court**

4

5

6   Ronald H. Sargis, Judge

7   United States Bankruptcy Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ADDENDUM "A"

**Guide to Judiciary Policy**

Vol. 4: Court and Case Management

**Ch. 8: Bankruptcy Case Policies**

§ 810 Overview

§ 815 Applicability

§ 820 Chapter 7 Fee Waiver Procedures
    § 820.10 Filing Fee Waiver Application and Initiation of the Chapter 7 Case
    § 820.20 Judicial Determination of Filing Fee Waiver Applications
    § 820.30 Developments in the Case
    § 820.40 Waiver of Additional Individual Debtor Fees

§ 830 Guidance for Protection of Tax Information
    § 830.10 Debtor's Duty to Provide Tax Information
    § 830.20 Restricted Access to Tax Information
    § 830.30 Tax Information Disclosure Requests
    § 830.40 Approved Access to Tax Information
    § 830.50 Required Redaction of Debtor Tax Information

**§ 810 Overview**

This chapter contains national judiciary policies regarding bankruptcy cases that were adopted either by the Judicial Conference of the United States or by the Director of the Administrative Office of the U.S. Courts (AO). They include:

• Procedures adopted by the Judicial Conference regarding the chapter 7 fee waiver provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) (see: § 820, below); and

• Director's Guidance Regarding Tax Information under 11 U.S.C. § 521 (see: § 830).

Note: This guidance is available on uscourts.gov, to which local courts should direct the public and members of the local bar.

**§ 815 Applicability**

This chapter applies to the bankruptcy courts.

**§ 820 Chapter 7 Fee Waiver Procedures**

The Judicial Conference promulgated these procedures to assist district courts and bankruptcy courts with implementing the fee waiver provisions set forth in Section 418 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. No. 109-8, 199 Stat. 23), and codified at 28 U.S.C. §§ 1930(f)(1)-(3). JCUS-SEP 13, pp. 8-9.

**§ 820.10 Filing Fee Waiver Application and Initiation of the Chapter 7 Case**

(a) In lieu of paying the prescribed chapter 7 filing fee or filing an installment application, an individual debtor may, along with the bankruptcy petition, file an application to waive the filing fee.

(1) Federal Rule of Bankruptcy Procedure 1006(c) requires that the application conform substantially to Official Form 103B.

(2) A defective or otherwise deficient waiver application should be processed according to the court's standard operating procedures for processing deficient pleadings and papers.

(b) When a chapter 7 petition in an individual debtor case is accompanied by an application to waive the filing fee, the court should initiate and process the case in the same manner as other individual chapter 7 cases.

**§ 820.20 Judicial Determination of Filing Fee Waiver Applications**

(a) Standard of Eligibility

(1) Under 28 U.S.C. §§ 1930(f)(1-3), the district court or bankruptcy court may waive the chapter 7 filing fee for an individual debtor who:

(A) has income less than 150 percent of the income official poverty line applicable to a family of the size involved; and

(Note: Since the Office of Management and Budget has never issued official poverty thresholds, these procedures interpret this statutory language to refer to the poverty guidelines updated periodically in the Federal Register by the Department of Health and Human Services (DHHS) under the authority of 42 U.S.C. § 9902(2). The Secretary of Health and Human Services is required to update the poverty guidelines annually, and defines guidelines separate for the 48 contiguous states and the District of Columbia, Alaska, and Hawaii. The DHHS does not define poverty guidelines for Puerto Rico, the U.S. Virgin Islands, American Samoa, Guam, the Republic of the Marshall Islands, the Federated States of Micronesia, the Commonwealth of the Northern Mariana Islands, and Palau. For these areas, the guidelines for the 48 contiguous states and the District of Columbia may be used. See: DHHS guidelines.)

(B) is unable to pay that fee in installments.

(2) The DHHS does not publish a standard definition of income, leaving the determination of that definition to individual program administrators.

(A) These procedures adopt a definition that is reasonable in the bankruptcy context.

(B) The income for comparison to the poverty guidelines is the .Total Combined Monthly Income¡± as reported (or as will be reported) on Schedule I.

(C) Amounts received as non-cash government assistance must be deducted from the total amount reported on Schedule I for fee waiver consideration.

(3) "Family size" may be defined as the debtor(s), the debtor's spouse (unless the spouses are separated and a joint petition is not being filed), and any dependents listed on Schedule I.

> Note: The DHHS uses the term "family unit" instead of .family size" but does not publish a standard definition of "family unit."

(4) The district court or bankruptcy court should consider the totality of the circumstances in determining whether the debtor is unable to pay the fee in installments as provided in 28 U.S.C. § 1930(f)(1). Official Form 103B elicits information relevant to this determination.

(5) A debtor may qualify for a waiver of the filing fee even if the debtor has paid or promised to pay a bankruptcy attorney, bankruptcy petition preparer, or debt relief agency in connection with the filing.

> Note: In 2008, Fed. R. Bankr. P. 1006(b)(1) was amended to delete the sentence requiring a statement in the installment fee application that the debtor has not paid an attorney or other person in connection with the case. In the installment fee application, debtors must certify they will not make additional payment or transfer any additional property to an attorney or other person for services in connection with the case until the filing fee is paid in full.

(b) Initial Court Procedures

(1) Filing Fees, Fee Waiver Application, Notice

> (A) "Filing fee" as defined at 28 U.S.C. 1930(f)(1), means the filing fee required by § 1930(a) or any other fee prescribed by the Judicial Conference under §§ 1930(b) and (c) that is payable to the clerk upon the commencement of a case under chapter 7. This includes Items 8 and 9 of the Bankruptcy Miscellaneous Fee Schedule.

> (B) The court should promptly determine whether the fee waiver application should be granted, denied, or set for early hearing, on notice to the United States trustee or bankruptcy administrator, the case trustee, the debtor, and, if applicable, the attorney for the debtor.

> (C) The order on the fee waiver should be transmitted to the United States trustee or bankruptcy administrator, the case trustee, the debtor, and, if applicable, the attorney for the debtor.

(2) Denial of Fee Waiver

> (A) Any order denying a filing fee waiver application may give the debtor a reasonable time in which to either pay the fee in full or begin making installment payments.

> (B) The order denying the fee waiver application should set forth an installment payment schedule.

> (C) It also should advise the debtor that failure to pay the fee or make timely installment payments may lead to dismissal of the case.

> (D) A standard order is included with the Official Form.

3

(3)  Conversion to Chapter 7

If a case is converted from another chapter to chapter 7, the court may waive any unpaid balance on the filing fee if the conditions described in section (a)(1) are satisfied.

# ADDENDUM "B"

**Order to Open Bankruptcy File for Steven Wayne Bonilla, Assignment of Miscellaneous File Number, and Scheduling of Supplemental Pleadings to be Filed by Mr. Bonilla;  Dckt. 1**

*FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FILED**

JUN 19 2019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                                      )          Misc. File No. 19-202
                                            )
Named Involuntary Petitioner                )
                                            )
STEVEN WAYNE BONILLA                        )
                                            )
_____)

**ORDER TO OPEN A BANKRUPTCY FILE FOR STEVEN WAYNE BONILLA, ASSIGNMENT OF MISCELLANEOUS FILE NUMBER AND SCHEDULING OF SUPPLEMENTAL PLEADINGS TO BE FILED BY MR. BONILLA**

Steven Wayne Bonilla, whose address is stated to be J-48500, 3-EY-13, San Quentin, California, has delivered to the court ninety-one (91) Official Bankruptcy Form 105 Involuntary Bankruptcy Petitions ("Form 105"). Each Form 105 names a different person (with the exception of several apparent duplicate Form 105s) as the person to be the bankruptcy debtor ("Form 105 Subject") in an involuntary bankruptcy case that Mr. Bonilla seeks to commence. From the addresses provided by Mr. Bonilla on each Form 105, the court has identified the various Form 105 Subjects to be either a United States District Court Judge, United States Magistrate Judge, a California Court of Appeal Justice, California Superior Court Judge, or a person working at a California Superior Court, District Court of Appeal, or U.S. District Court.

The court has been notified that Mr. Bonilla has filed Form 105s naming federal and state court judges and staff as the Form 105 Subjects in the Northern, Central, and Southern Federal Districts of California. Those Form 105s in the other Federal Districts are the subject of separate orders issued by the Chief Bankruptcy Judges in those Districts. It appears that the total number of

1   Form 105s filed in the four Federal Districts in California are in excess of two hundred and twenty-

2   five (225) in number.

3          The Order of the Chief Bankruptcy Judge in the Central District of California provides some

4   additional information concerning Mr. Bonilla and his court filing history.  In the Central District of

5   California, Mr. Bonilla has been determined to be a "vexatious litigant" and an order  has been

6   entered in that District that no *pro se* petition or other document can be filed by the Clerk of the Court

7   without there being a pre-filing review of the documents sought to be filed and the filing authorized

8   by the federal judge ("Central District Vex Order").  *In re Bonilla*, CV-18-7603-DMG (JPR), 2018

9   WL 5787128, at *6 (C.D. Cal. 2018).  The Central District Vex Order addresses a series of forty-four

10  (44) petitions filed by Mr. Bonilla in the Central District of California seeking a review by that federal

11  court of his state court murder conviction.  *Id.* at *1.  The Central District Vex Order cites to a prior

12  order transferring one of the petitions to the Northern District of California, the Federal District in

13  which San Quentin Prison is located, and includes the following statement concerning Mr. Bonilla's

14  court filing practices:

15          As noted, Bonilla was convicted in Alameda County (*see id.* (noting, "Re: Alameda
         County Superior Court Case No. H-12210-A") ); *see also Bonilla v. Davis*, No.
16       08-CV-471-YGR, 2015 U.S. Dist. LEXIS 88254, at *1 (N.D. Cal. July 7, 2015), and
         is housed at San Quentin in Marin County (see No. 5536, ECF No. 1 at 1 (listing
17       address) ). In an order transferring the Petition to the Northern District, in which both
         of those counties lie, see 28 U.S.C. § 84(a), this Court noted that Bonilla was a
18       "profligate filer" of "hundreds of lawsuits and habeas petitions throughout the Ninth
         Circuit in the past several years." (No. 5536, ECF No. 3 at 1-2.) . . .
19
         Despite the Court's detailed explanation about its lack of jurisdiction, Bonilla
20       subsequently filed 43 additional case-initiating documents in this District, all
         challenging his state murder conviction, and 24 of those cases have since been
21       terminated. He currently has 19 cases pending in this Court, all filed from August to
         October of this year . . .  On September 10, 2018, this Court issued an Order to Show
22       Cause Why Plaintiff Should Not Be Declared a Vexatious Litigant. Since then,
         Bonilla has filed responses in each of the cases listed in the Order (*see infra* sec.
23       II.B.1) and numerous new case-initiating documents as well.

24       Each response to the Order to Show Cause contains the same baseless argument that
         "any judgment, order, or transfer by a court lacking subject matter jurisdiction is void
25       on its face; and the [r]eviewing [c]ourt's jurisdiction is LIMITED to reversing the trial
         court's void judgment." (*See, e.g., Bonilla v. Unknown*, No. 18-CV-7603-DMG (JPR)
26       (C.D. Cal. filed Aug. 30, 2018), ECF No. 5 at 1; *Bonilla v. Unknown*, No.
         18-CV-7606-DMG (JPR) (C.D. Cal. filed Aug. 30, 2018), ECF No. 5 at 1.) This same
27       argument is made in many of his initial complaints. (*See, e.g., Compl.* at 1-3, *Bonilla
         v. Rosenbluth*, No. 18-CV-7696-DMG (JPR) (C.D. Cal. filed Sept. 5, 2018), ECF
28       No. 1 (noting that "this has [ ]nothing to do with prison issues, conditions nor

1   confinement[ ] . . . the judgment is void on its face . . . [n]o lawful jurisdiction of
2   subject matter nor of person was, nor has been established on the record").) Neither
    Bonilla's responses to the Order to Show Cause nor the new case-initiating documents
3   provide any persuasive or legitimate reason why he should not be deemed a vexatious
    litigant. To the contrary, they demonstrate why such an order is necessary.

4   *Id.*, *1-*2.

5
                    **FEDERAL LAW GOVERNING COMMENCEMENT**
6                      **OF AN INVOLUNTARY BANKRUPTCY CASE**

7         Official Bankruptcy Form 105 has been adopted to be the required form for which creditors

8   of a person may commence an involuntary bankruptcy case against such person.  Congress has

9   enacted as part of the Bankruptcy Code the statutory basis and requirements for commencing an

10  involuntary bankruptcy case.  11 U.S.C. § 303.  As stated in COLLIER ON BANKRUPTCY, Sixteenth

11  Edition, ¶ 303.01,

12
          Filing an involuntary petition may have serious consequences for a debtor,
13        nonpetitioning creditors and petitioning creditors. Therefore, it is not surprising that
          section 303 [11 U.S.C. § 303] is replete with details regarding involuntary filings,
14        many of which safeguard against frivolous or malicious filings.

15  These consequences are much more significant and serious than the "mere" filing of a complaint

16  against some, causing the target of the involuntary petitions rights and interests to be immediately

17  effected without the opportunity for prior hearing.  *Id.*  While Congress determined that such

18  immediate consequences are warranted, the commencement of such a case in the court is subject to

19  close review.[1]

20  ─────────────────────────────────

21       [1] An involuntary bankruptcy case is "commenced" by the filing of the involuntary
    petition.  Some of the consequences of a bankruptcy case being commenced include: (1) creation
22  of the automatic stay pursuant to 11 U.S.C. § 362(a) working as an injunction against the
    petitioning creditors and other third-parties of any act or actions against the person for whom the
23  case has been commenced (and subjecting such third-parties to being held in contempt for such
    violations); (2) the automatic stay rendering void acts, actions, and transfers involving such third-
24  parties; (3) imposition pursuant to 11 U.S.C. § 363 of restrictions, limitations, and statutory
    requirements for the use, sale, lease, or transfer of any property of the bankruptcy estate; and
25  (4) creation of a bankruptcy estate pursuant to 11 U.S.C. § 541 that consists of all of the real and
26  personal property of the person put into the involuntary bankruptcy case.

27
         If such events are to be put in motion, *ex parte*, without notice or opportunity of the target
28  of the involuntary bankruptcy petition to address until after the fact, it is not unreasonable that

As specified in 11 U.S.C. § 303(a) an involuntary bankruptcy case can be commenced only under Chapters 7 or 11 of the Bankruptcy Code. Here, the ninety-one (91) Form 105s have checked the box for an involuntary Chapter 7 bankruptcy case. Such a case is for the liquidation of the assets of the person who is placed in the involuntary bankruptcy case.

The fundamental requirements for an involuntary bankruptcy case to be commenced are specified in 11 U.S.C. § 303(b) and are summarized as follows:

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –

(1) There must be at least three or more entities, each of which is either:

(a) a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder,

and

(b) if such noncontingent, undisputed claims aggregate at least $ 16,750 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

or

(2) if there are fewer than 12 such holders of claims or, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, by one or more of such holders that hold in the aggregate at least $ 16,750 of such claims; . . . .

Thus, for the involuntary case to be commenced, the court has to be presented with the involuntary petition that appears to meet the above conditions.

As discussed in COLLIER ON BANKRUPTCY, for there to be an involuntary bankruptcy petition filed and case commenced, the persons seeking the commencement of such involuntary case must be creditors holding "claims" (obligations) owed by the person whom they seek to put into bankruptcy. COLLIER ON BANKRUPTCY, SIXTEENTH EDITION, ¶ 303.09. While the term "claim" is broadly defined in 11 U.S.C. § 101(5), it must be based on a right to payment that is not contingent or subject to *bona fide* dispute as to liability or amount. 11 U.S.C. § 303(b)(1).

the Official Bankruptcy Form 105 documents appear to show that grounds exist for, and the person seeking to file the involuntary bankruptcy petition has standing to commence such federal case, such extraordinary relief/legal consequences.

4

1    In discussing the requirement for there to be claims not in *bona fide* dispute, COLLIER ON

2  BANKRUPTCY discusses the unique, and potentially abusive, impact of the involuntary case filing,

3  and how it can be used abusively by someone not entitled to seek such relief. *Id.* ¶ 303.11.[2]

4    As part of the Federal Rules of Bankruptcy Procedure adopted by the Supreme Court, Federal

5  Rule of Bankruptcy Procedure 9011 requires and places on a party seeking to file any document with

6  the court, in pertinent part, that:

7    [a] petition, pleading, written motion, or other paper, an attorney or unrepresented
     party is certifying that to the best of the person's knowledge, information, and belief,
8    formed after an inquiry reasonable under the circumstances,--

9    (1) it is not being presented for any improper purpose, such as to harass or to cause
     unnecessary delay or needless increase in the cost of litigation;
10

11   (2) the claims, defenses, and other legal contentions therein are warranted by existing
     law or by a nonfrivolous argument for the extension, modification, or reversal of
     existing law or the establishment of new law;
12

13   (3) the allegations and other factual contentions have evidentiary support or, if
     specifically so identified, are likely to have evidentiary support after a reasonable
     opportunity for further investigation or discovery; and
14

15   (4) the denials of factual contentions are warranted on the evidence or, if specifically
     so identified, are reasonably based on a lack of information or belief.

16  Fed. R. Bankr. P. 9011.

17    As addressed by the United States Supreme Court, the federal judicial process is not a GIGO

18  (garbage in-garbage out) system. In *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130

19  S. Ct. 1367, 1381 n.14, 176 L. Ed. 2d 158, 173 n.14, 15 (2010), the Supreme Court directed the trial

20  court that even when there was no opposition, the court must conclude that based on the law and

21  evidence presented that the relief requested was permissible under applicable law. *See also Varela*

22  *v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 489, 499 (B.A.P. 9th Cir. 2003)

23

24    [2] The bankruptcy court in *In re William M. Risby, Petitioner*, 2008 WL 116701 (Bankr.
25  W.D. Ark. 2008), provides a detailed discussion of the serious effect of the mere filing of an
    involuntary petition and the potential for misuse and abuse. The court incorporates in by this
26  reference that very detailed discussion, rather than merely paraphrasing that decision. That
27  discussion includes consideration of whether there appears to facially be a potential *bona fide*
    dispute as to the claim stated by the person seeking to commence the involuntary bankruptcy
28  case.

1   (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir. 1994)).

2   **Federal Law Regarding Prisoner Actions**

3       The court's review of the ninety-one (91) Form 105s is not a unique process. Congress

4   provides in 28 U.S.C. § 1915A(a) that before docketing the court is to review a "complaint in a civil

5   action in which a prisoner seeks redress from a governmental entity or officer or employee of a

6   governmental entity." The court is to review the complaint and dismiss the complaint, or any portion

7   thereof, that is determined to be "frivolous, malicious, or fails to state a claim upon which relief may

8   be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.

9   § 1915A(b). The statute defines "prisoner" to include "any person incarcerated or detained in any

10  facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of

11  criminal law. . . ." 28 U.S.C. § 1915A(c).

12      While a Form 105 is not a "complaint," as discussed above, the automatic, self-executing

13  results by operations of law are of greater impact than a "mere" complaint.

14      Another analogy to which the filing of a Form 105 and commencing an involuntary

15  bankruptcy case can be drawn is that of a temporary restraining order that is obtained *ex parte* and

16  without notice to person against whom the injunctive relief is sought. To obtain such extraordinary

17  relief one must "clearly show that immediate and irreparable injury, loss, or damage will result before

18  the adverse party can be heard in opposition. . . ." Fed. R. Civ. P. 65(b). Further, to obtain such *ex*

19  *parte*, no notice relief, the requesting party must give security (commonly a bond) in an amount the

20  court determines proper to pay costs and damages sustained by the other party if the injunctive relief

21  is determined to be wrongful. Fed. R. Civ. P. 65(c).

22      The bankruptcy court reviewing the Form 105s to see if they facially show the basic grounds

23  for the petitioning creditor to have standing and to comply with the requirements of 11 U.S.C. § 303

24  is not inconsistent with this other well established federal law.

25

26              **REVIEW OF FORM 105s DELIVERED BY MR. BONILLA**
                **TO THE EASTERN DISTRICT OF CALIFORNIA**

27      With the exception of the Form 105 Subject's name and address being different, each of the

28  ninety-one (91) Form 105s are the same. Each seeks to have the Form 105 Subject put into an

1    involuntary Chapter 7 bankruptcy liquidation.

2        On each of the Form 105s, Mr. Bonilla does not state that the debts of the Form 105 Subject

3    are either primarily consumer or business debts.  Interlineated on each of the Form 105s is the phrase,

4    "STATUTORY LIEN - 633 F.2d 844."

5        The federal case citation stated on the Form 105s is to a Ninth Circuit Court of Appeals

6    decision, *Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980).   In *Rankin,* the Ninth Circuit discussed

7    the judicial immunity given for alleged violations of 42 U.S.C. § 1983 (alleged civil rights violations)

8    for judicial acts not taken "in the 'clear absence of all jurisdiction.'" *Rankin v. Howard*, 633 F.2d at

9    846.  For the state court judge whose conduct was at issue in *Rankin*, the court considered whether

10   the state court judge had jurisdiction over the person that was the subject of that court's order and

11   whether the act was one "normally performed by a judge."  *Id.* at 847.  The Ninth Circuit panel in

12   *Rankin* concluded that since the state court judge knew that he had no personal jurisdiction over the

13   subject of his order, then he could not claim judicial immunity.   The *Rankin* decision acknowledges

14   the broad grant of judicial immunity that exists as discussed by the United States Supreme Court in

15   *Stump v. Sparkman*, 435 U.S. 349 (1978), which states:

16
17       The governing principle of law is well established and is not questioned by the parties.
         As early as 1872, the Court recognized that it was "a general principle of the highest
18       importance to the proper administration of justice that a judicial officer, in exercising
         the authority vested in him, [should] be free to act upon his own convictions,
19       apprehension of personal consequences to himself." *Bradley v. Fisher*, *supra*, at 347.
         For that reason the Court held that "judges of courts of superior or general jurisdiction
20       are not liable to civil actions for their judicial acts, even when such acts are in excess
         of their jurisdiction, and are alleged to have been done maliciously or corruptly."
21       13 Wall., at 351.  Later we held that this doctrine of judicial immunity was applicable
         in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, for the legislative
22       record gave no indication that Congress intended to abolish this long-established
         principle. *Pierson v. Ray*, 386 U.S. 547 (1967).

23   *Stump v. Sparkman*, 435 U.S. 349, 355-356 (1978).

24       It appears that the case citation included by Mr. Bonilla stands for the proposition that the

25   various judicial officers listed on the Form 105s would have a *bona fide* (though possibly disputed

26   by Mr. Bonilla) defense as there is the issue of judicial immunity identified by Mr. Bonilla.

27       The Form 105s identifies the "debt" as the basis for Mr. Bonilla filing the Form 105s as being

28   an "obligation."  No other information is provided other than Mr. Bonilla stating that the "Obligation"

1　is Three Hundred and Two Billion, Five Hundred and Nineteen Million, Five Hundred and Two

2　Thousand, and Nine Hundred and Thirteen Dollars and Eighty-Five Cents ($302,519,502,913.85) on

3　each of the Form 105s.

4　　　It is not clear whether it is asserted that the $302,519,502,913.85 Obligation stated is joint and

5　several liability of all the Form 105 Subjects or that each of the ninety-one (91) Form 105 Subjects

6　in the Eastern District of California and the total amount asserted is that multiple of the

7　$302,519,502,913.85.

8　　　The amount of the obligation (whether joint and several liability or multiple separate

9　liabilities) raises serious questions and puts in the spotlight whether it is an actual liability and not

10　something subject to *bona fide* dispute.  To put the asserted Three Hundred and Two Billion, Five

11　Hundred and Nineteen Million, Five Hundred and Two Thousand, and Nine Hundred and Thirteen

12　Dollars and Eighty-Five Cents ($302,519,502,913.85) in economic context, the total debts owed to

13　all of its creditors (including asserted fire victims) listed by Pacific Gas and Electric Company

14　("PG&E") on the attachment to its bankruptcy petition in its current bankruptcy case pending in the

15　Northern District of California is Fifty One Billion, Four Hundred Eleven Million Dollars

16　($51,411,000,000.00) – which is a mere 16% of the obligation that Mr. Bonilla lists as being owed

17　to him only.  Bankr. N.D. Cal. 19-30089; Dckt. 1 at 5.

18　　　On their faces, the Form 105s demonstrate that Mr. Bonilla is not presenting the court with

19　documents which may properly be filed as involuntary bankruptcy petitions.  Rather, on their face

20　they create substantial doubt whether Mr. Bonilla qualifies as one to file one or more involuntary

21　bankruptcy cases against the Form 105 Subjects and, to the extent he asserts an obligation, and based

22　on the citation to the Ninth Circuit Decision in *Rankin*, that a *bona fide* dispute is indicated.

23
### STANDING TO COMMENCE AN
24
### INVOLUNTARY BANKRUPTCY CASE

25　　　The federal courts are not a forum for the theoretical or one in which parties who do not have

26　rights attempt to litigate on behalf of others who are not before the court (with limited exceptions to

27　this rule, such as class action and other special representative proceedings authorized by Congress).

28　Standing must be determined to exist before the court can proceed with the case. *Sacks v. Office of*

1   *Foreign Assets Control*, 466 F.3d 764, 771. (9th Cir. 2006)

2         One of the first things that a law student learns about American Jurisprudence is that the law

3   does not condone the "officious intermeddler." One is not allowed to assert claims or rights in which

4   he or she has no interest. In the federal courts, this is the Constitutional requirement of "standing."

5

6           Article III of the Constitution confines federal courts to decisions of "Cases" or

7           "Controversies." Standing to sue or defend is an aspect of the case-or-controversy requirement. (Citations omitted.) To qualify as a party with standing to litigate, a person must show, first and foremost, "an invasion of a legally protected interest" that

8           is "concrete and particularized" and "actual or imminent.' (Citations omitted.)...Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct state in the outcome.'

9           (Citations omitted.)

10  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64, 117 S.Ct. 1055 (1997).

11         The court may raise the issue of standing *sua sponte*, Rule 12(h)(3), Federal Rules of Civil

12  Procedure[3] even if it is not raised by a party to the action. A person must have a legally protected

13  interest, for which there is a direct stake in the outcome. *Arizonans for Official English v. Arizona*,

14  520 U.S. 43, 64, 117 S.Ct. 1055 (1997). The Supreme Court provided a detailed explanation of the

15  Constitutional case in controversy requirement in *Northeastern Florida Chapter of Associated*

16  *General Contractors of America v. City of Jacksonville Florida*, 508 U.S. 656, 663, 113 S.Ct. 2297

17  (1993). The party seeking to invoke federal court jurisdiction must demonstrate (1) injury in fact, not

18  merely conjectural or hypothetical injury, (2) a causal relationship between the injury and the

19  challenged conduct, and (3) the prospect of obtaining relief from the injury as a result of a favorable

20  ruling is not too speculative. *Id.* In determining whether the plaintiff has the requisite standing and

21  the court has jurisdiction, the court may consider extrinsic evidence. *Roverts v. Corrothers*, 812 F.2d,

22  1173, 1177 9th Cir. 1987).

23         The standing requirement is not merely a "procedural issue," but a fundamental requirement

24  arising under the Constitution.

25         Here, with the deficiencies in the information provided in the Form 105s, especially in light

26

27

28         [3] As made applicable to this Adversary Proceeding by Federal Rules of Bankruptcy Procedure 7012 and 9014(c) by this Order.

1  of the *ex parte*, without an opportunity to defend or address prior to the involuntary case being

2  commenced, significant impact and potential harm on a Form 105 Subject with the commencement

3  of an involuntary bankruptcy case, the identification of standing is even more significant.

4

**MISCELLANEOUS FILE FOR THE FORM 105s
AND AFFORDING MR. BONILLA ACCESS TO THE COURT**

6  Though the documents delivered by Mr. Bonilla raise significant doubts whether they should

7  be filed, the court instructs the Clerk of the Court to open a bankruptcy court file for Mr. Bonilla,

8  which shall be assigned a miscellaneous file number so as to not make it appear that Mr. Bonilla has

9  filed a bankruptcy case personally ("Miscellaneous File"). All of the Form 105s delivered by

10  Mr. Bonilla to date and in the future will be docketed in the Miscellaneous File opened for

11  Mr. Bonilla.

12  Mr. Bonilla may file supplemental pleadings to addresses his standing to file an involuntary

13  bankruptcy petition for each of the Form 105 Subjects, and other subjects of future Form 105s

14  delivered to the court by Mr. Bonilla. The supplemental pleadings, which shall be supported by

15  competent admissible evidences as provided under the Federal Rules of Evidence, shall include:

16

17  A.  A statement of the legal and factual basis for the obligation asserted by Mr. Bonilla against each of the Form 105 Subjects against whom Mr. Bonilla is seeking to file an involuntary bankruptcy case. This shall include any applicable law upon which such

18      obligation is asserted to exist.

19  B.  Copies of the documents or other writings upon which Mr. Bonilla asserts that the obligation exists.

20

21  C.  Such other documents and information Mr. Bonilla determines would be in support of his standing to file an involuntary petition.

22  In establishing the Miscellaneous File for Mr. Bonilla, the court ensures that there is a clear

23  record of the involuntary bankruptcy cases he is attempting to have commenced. The court is also

24  creating a vehicle for Mr. Bonilla to access the court and address the issues that arise given the

25  amount of the asserted obligation(s), the legal authority he has cited, the potential *bona fide* defenses

26  he has identified, and the lack of information about the basis for such obligation(s).

27  Due to the limited information provided in the ninety-one (91) Form 105s, Mr. Bonilla should

28  not assume that the issues identified in this Order are the universe of all possible issues that may arise

1 in an involuntary bankruptcy case. If such additional issues are identified, Mr. Bonilla will be

2 afforded the opportunity to address such issues, as he is now afforded the opportunity to address the

3 initially identified issues.

4 **Required Filing Fees**

5 The filing fee required to be paid when commencing a Chapter 7 bankruptcy case is specified

6 in 28 U.S.C. § 1930(a)(1)(A), plus administrative fees, to currently be $335.00. For a person filing

7 a voluntary Chapter 7 case, the filing fee may be paid in installments. 28 U.S.C. § 1930(a)(7). The

8 Judicial Conference of the United States is permitted to authorize the waiving of the filing fee in a

9 Chapter 7 case for an individual based on the specified financial guidelines.

10 Federal Rule of Bankruptcy Procedure 1006 amplifies the requirement for the payment of a

11 filing fee when an involuntary bankruptcy petition is received by the court, providing that with respect

12 to the waiver of the Chapter 7 filing fee:

13     (a) General requirement

14         **Every petition shall be accompanied by the filing fee** except as provided in
subdivisions (b) and (c) of this rule. For the purpose of this rule, "filing fee"

15         means the filing fee prescribed by 28 U.S.C. § 1930(a)(1)-(a)(5) and any other
fee prescribed by the Judicial Conference of the United States under 28 U.S.C.

16         § 1930(b) that is payable to the clerk upon the commencement of a case under
the Code.

17

18     (b) Payment of filing fee in installments

19         (1) Application to pay filing fee in installments

20         **A voluntary petition by an individual** shall be accepted for filing, regardless
of whether any portion of the filing fee is paid, if **accompanied by the
debtor's signed application**, prepared as prescribed by the appropriate

21         Official Form, stating that the debtor is unable to pay the filing fee except in
installments.

22     . . .

23     (c) Waiver of filing fee

24         A **voluntary chapter 7 petition filed by an individual** shall be accepted for
filing **if accompanied by the debtor's application** requesting a waiver under

25         28 U.S.C. § 1930(f), prepared as prescribed by the appropriate Official Form.

26 Fed. R. Bankr. P. 1006 (emphasis added).

27 As discussed in 1 Collier Practice Guide, ¶ 14.14, citing to 28 U.S.C. § 1930 and Federal Rule

28 of Bankruptcy Procedure 1006, the requirement for the payment of filing fees for an involuntary

1  bankruptcy case when the involuntary petition (the Form 105s at issue before the court) is presented

2  to the court for filing:

3

4  [4] Filing Fees—28 U.S.C. § 1930

5  Filing fees must be paid in full to the clerk of the bankruptcy court for all involuntary cases. Installment payments are not permitted. . . .

6  With the ninety-one (91) Form 105s, Mr. Bonilla included a request with respect to the filing

7  fees, stating, "Please send me a waiver form for any filing fee." The filing fee waiver only applies

8  to an individual filing a voluntary Chapter 7 bankruptcy case - not someone seeking to file a Form

9  105 involuntary bankruptcy petition.

10  In addition to supplemental pleadings provided by Mr. Bonilla to show he has standing and

11  meets the necessary requirements for filing an involuntary bankruptcy petition, Mr. Bonilla will have

12  to provide the court with the filing fee for each involuntary petition or provide a legal basis why such

13  is not required.

14  **ORDER**

15  The court having reviewed the ninety-one (91) Form 105s (Official Bankruptcy Form 105,

16  involuntary bankruptcy petition) delivered to the court by Steven Wayne Bonilla, the information

17  provided in the Forms 105s, consideration of the Constitutional requirement for standing and the

18  necessary conditions for a person to file an involuntary bankruptcy petition, the filing fees required

19  pursuant to 28 U.S.C. § 1930 and Federal Rule of Bankruptcy Procedure 9006 for the filing of an

20  involuntary Chapter 7 bankruptcy petition, and good cause appearing;

21  **IT IS ORDERED** that the Clerk of the Court shall open Miscellaneous File No. 19-00202

22  for Steven Wayne Bonilla, the Involuntary Petitioner, and place as separate docket entries therein each

23  of the ninety-one (91) Official Bankruptcy Form 105 involuntary bankruptcy petitions delivered to

24  the court by Mr. Bonilla, and related documents presented to the court at the time of this Order and

25  any time thereafter unless otherwise provided by subsequent order.

26  Each Form 105 presented to the Clerk for filing by Mr. Bonilla shall be a separate docket entry

27  item in the Miscellaneous File. For the ninety-one (91) Form 105s delivered to the court at the time

28  the Miscellaneous File for Steven Wayne Bonilla was opened, the Clerk of the Court shall place them

1  on the docket in the order set forth in the List of Form 105s in the court's separate docketing
2  instruction issued in conjunction with this Order.

3      If future Form 105s are presented by Mr. Bonilla to the court, they will be docketed in the
4  Miscellaneous File when received, as the next open docket entry.

5      **IT IS FURTHER ORDERED** that within thirty (30 days) of the date of this Order, Wayne
6  Steven Bonilla shall file Supplemental Pleadings, if any are so desired by him, to addresses his
7  standing to file an involuntary bankruptcy petition for each of the Form 105 Subjects, and other
8  subjects of future Form 105s delivered to the court by Mr. Bonilla.  The supplemental pleadings,
9  which shall be supported by competent,  admissible evidences as provided under the Federal Rules
10 of Evidence, shall include:

11     A.    A written statement of the legal and factual basis for the obligation asserted by
              Mr. Bonilla against each of the Form 105 Subjects.  This shall include any applicable
12            law upon which such obligation is asserted to exist.

13     B.    The above written statement shall include the legal and factual basis by which
              Mr. Bonilla asserts he has standing to file the Form 105s against each Form 105
14            Subject.

15     C.    Copies of the documents or other writings upon which Mr. Bonilla asserts that the
              obligation is based.
16
       D.    Such other documents and information Mr. Bonilla determines would be in support
17            of his standing to file an involuntary petition with the court.

18     **IT IS FURTHER ORDERED** that Mr. Bonilla will pay to the court at the time any
19 involuntary Chapter 7 petition (Official Bankruptcy Form 105) the filing fee for each such involuntary
20 petition to be filed or provide the court with a legal basis why such is not required.  Such legal basis
21 may be presented with the Supplemental Pleadings specified above.

22     **IT IS FURTHER ORDERED** that if no Supplemental Pleadings are timely filed, the Clerk
23 of the court may close this Miscellaneous File.

24     **IT IS FURTHER ORDERED** that notwithstanding the closing of the Miscellaneous File,
25 the Clerk of the Court shall docket any additional Form 105s and file any subsequent documents
26 delivered to the court by Steven Wayne Bonilla in the Miscellaneous File without reopening the file
27 or Mr. Bonilla requesting the reopening of the Miscellaneous File.

28     Upon the filing of any additional pleadings or documents in the Miscellaneous File after the

1 ninety-one (91) Form 105s and the transmittal cover letters with them at the time the Miscellaneous

2 File is opened, the Clerk of the Court shall notify the undersigned judge to whom the Miscellaneous

3 file is assigned that additional pleadings or documents have been docketed or filed, the docket entry

4 number for each such item, and the docket description for each such additional pleading or document.

5 Dated: June 19, 2019

6

7 _____
RONALD H. SARGIS, Chief Judge

8 United States Bankruptcy Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below.* The Clerk of Court will send the document via the BNC or, if checked __**XXXX**__, via the U.S. mail.

Steven Wayne Bonilla
J-48500, 3-EY-13
San Quentin, CA 94974

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING


    The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities at the addresses shown below or on the attached list.


      Steven Wayne Bonilla
      J-48500, 3-EY-13
      San Quentin, CA 94974


DATED: 6/19/19          By: _____
                        Deputy Clerk


EDC 3-070 (Rev. 6/28/10)

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*.  The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

Steven Wayne Bonilla
J-48500, 3-EY-13
San Quentin, CA 94974